IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WINNEBAGO TRIBE OF NEBRASKA, et
al.,

　　　　　　　　Plaintiffs,

　　　　vs.　　　　　　　　　　　　　　　　Case No. 02-4070-JTM

PAUL MORRISON, Attorney General of the
State of Kansas, et al.,

　　　　　　　　Defendants.

MEMORANDUM AND ORDER

　　　This is an action in which the plaintiff Indian Tribes allege that they have been subjected to Kansas Motor Vehicle Fuel Tax, contrary to the provisions in federal and state law.  The court has previously entered an injunction requiring the return of property seized from the plaintiffs.  The matter is now before the court on the plaintiffs' motion for summary judgment.

　　　Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party.  *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988).  The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt.  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance.  *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs.  Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The uncontroverted facts establish that the Winnebago Tribe of Nebraska,  Sac and Fox Nation of Missouri, the Iowa Tribe of Kansas and Nebraska, and the Kickapoo Tribe of Indians of the Kickapoo Reservation are federally-recognized American Indian tribes organized under the Indian Reorganization Act of 1934, 25 U.S.C. § 476. The Winnebago Tribe is the beneficial owner of and exercises jurisdiction over the Winnebago Tribe of Nebraska Indian Reservation. Ho Chunk, Inc., and plaintiff HCI Distribution are corporations organized under the laws of the Winnebago Tribe. HCI is wholly-owned by Ho-Chunk, Inc., which in turn is wholly-owned by the Winnebago Tribe.

On May 8, 2001, HCI mailed to the Kansas Department of Revenue both an Application for Motor Vehicle Fuel and Special Fuel Importer/Exporter License and an Application for Motor Vehicle Fuel and Special Fuel Distributor's License.  HCI also sent a Motor Vehicle Fuel and Special Fuel Importer/Exporter Bond in the amount of $5,000.00, and a Motor Vehicle Fuel and Special Fuel Distributor's Bond in the amount of $1,000.00. On May 11, 2001, the Department returned the application and bond to HCI by mail.

2

HCI employee Crystal Appleton called the Department to ask why the documents were returned. The Department representative informed Ms. Appleton that the Department did not require that HCI obtain a distributor's license, and that the only license HCI needed was an importer/exporter license.  The Department issued HCI  not a distributor's license, but a Motor Fuel Importer/Exporter License with an effective date of May 4, 2001.

The Sac and Fox Nation wholly owns and operates two retail gas stations – the Trad'n Post in Reserve, Kansas and the Sac & Fox Truck Stop in Powhattan, Kansas. Both of these tribally-owned businesses are located on land held in trust by the United States for the benefit of the Sac and Fox Nation.  The Iowa Tribe wholly owns and operates a gas station in Kansas on land held in trust for the Iowa Tribe by the United States of America. The Kickapoo Tribe owns and operates two gas stations in Kansas located on lands within the exterior boundaries of the reservation pursuant to Treaties executed in 1854.

The Winnebago Tribe's HCI began selling fuel to the Kansas Tribes in August 2001.  It has transported the fuel sold to the Kansas Tribes by tanker trucks from Nebraska to the Kansas Tribes' tribal gas stations. At no time did the Winnebago Tribe ever purchase or receive the subject fuel in Kansas from any person, and the fuel was not stored and did not come to rest in Kansas before its delivery by the Winnebago Tribe to the Kansas Tribes' facilities. The Winnebago Tribe did not and does not own or lease storage facilities, transfer facilities, mixing facilities, offices or any other facilities within Kansas.

On September 10, 2001, shortly after the Winnebago Tribe started selling motor fuel to the Kansas Tribes, defendant Lochow of the Kansas Department of Revenue sent a letter to Lance Morgan of HCI.  Lochow stated that HCI, as a licensed importer under the Act, was required to report and remit Kansas fuel taxes on deliveries of fuel to any retailer in Kansas regardless of location.

Plaintiff John Blackhawk, Chairman of the Winnebago Tribe, responded by writing and disputed that Kansas had the right under federal law to tax the sales to the Kansas Tribes. In turn,

Charles Reomer of the Kansas Department of Revenue responded by again demanding payment of the fuel tax. He wrote: "Under Kansas law, tax is due upon importation of motor fuel by the distributor of first import." (Plf. Exh. K).

On April 8, 2002, defendant Scott, designee of the Director of Taxation, Kansas Department of Revenue, submitted an Affidavit and Application for Arrest Warrant that led to the seizures of property and other actions that necessitated this lawsuit. The Affidavit and Application stated that "the distributor, importer or manufacturer on or before the 25th day of each month, shall render to the director at the director's office in Topeka, Kansas a report 'certified to be true and correct showing the number of gallons of motor fuel imported.' See K.S.A. 79-3410." (Plf. Exh. B). In fact, Section 79-3410 of the Act states that the report must show "the number of gallons of motor-vehicle fuels or special fuels received by such distributor, manufacturer, importer, exporter or retailer during the preceding calendar month."

On the following day, April 9, 2002, the defendants, without any further notice or opportunity to be heard, seized two trucks, two tanker trailers, fuel and fuel oil, two black permit books and shipping papers belonging to HCI.  At the same time, the Department of Revenue entered orders for jeopardy assessment and issued tax warrants against HCI and the individual plaintiffs. Defendants also initiated criminal proceedings against plaintiffs HCI, Chairman Blackhawk and Lance Morgan.

In their motion for summary judgment, the plaintiffs argued that the relief plaintiffs sought was appropriate because federal law barred the defendants from imposing the taxes in question – the legal incidence of tax on the plaintiffs was an attempt to tax for a transaction occurring in Indian country.  *See Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 459 (1995).  Further, they argued that the attempted taxation was improper under Kansas law because the plaintiffs do not meet the definition of a "distributor of first receipt" under K.S.A. 79-3408(c), where the legal incidence of the state's fuel tax falls on the "distributor of the first receipt."  *See Sac and Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 580 (10th Cir. 2000) ("Kansas law expressly states that the legal

incidence of the motor fuel tax is upon the distributors and they are responsible for remitting the tax").

Because the issues in the present case required close construct of Kansas law, the Court certified the question of the application of the Kansas statute to the Kansas Supreme Court on June 30, 2005. (Dkt. No. 277).  On February 5, 2007, the Kansas Supreme Court held that under Kansas law the distributor of first receipt is liable for payment of the motor fuel tax; that importers are not included within the meaning of "distributors"; and that HCI did not "receive" fuel within Kansas so as to render it liable to the state motor fuel tax. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 150 P.3d 892 (2007).

As stated in the conference conducted with counsel on August 13, 2007, for the reasons then stated and consistent with the ruling of the Kansas Supreme Court, the court grants summary judgment to plaintiffs as to Count I of their complaint.  The court also then noted the existence of the pending motion for sanctions against the defendant.  The motion seeks sanctions for the delay in obtaining the return of the plaintiffs' seized property.

The court granted the motion for a preliminary injunction and directed return of the seized property on Friday, August 5, 2002. The Attorney General filed a notice of appeal August 6, and submitted an application for a stay on August 7, the following Tuesday.  The request for a stay was denied by the Court of Appeals on August 18, and on August 20, 2002, the parties executed an agreed-upon order to effect the return of the seized property.

The court finds that sanctions should not issue.  First, the delay in the return of the seized property was brief, and was largely occasioned by the necessary delay in the defendants' attempt to legitimately, if unsuccessfully, appeal the injunctive relief awarded.  The defendants' actions were consistent with Fed.R.Civ.Pr. 62(c), and thus not any willful violation of the court's order.  Further, plaintiffs have failed to show any separate injuries arising from this brief delay, and the pleadings indicate that the plaintiffs had already hired, prior to the court's written order, other trucks to allow

it to continue operations.  *See Entech Systems v. Bhaskar*, 72 F.Supp.2d 1272 (D. Kan. 1999) (finding of contempt within discretion of court).

IT IS ACCORDINGLY ORDERED this 6th day of September, 2007 that the plaintiffs' Motion for Summary Judgment (Dkt. No. 232) is hereby granted; their Motion for Sanctions (Dkt. No. 93) is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE